IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JESSIE W. PEARSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.  3:05-CV-418-T |
| | ) |
| DAVID MCNAIR, et al., | ) |
| | ) |
|     Defendants. | ) |

### DEFENDANTS' SPECIAL REPORT

COME NOW former Jail Administrator David McMichael, incorrectly designated as "David McNair" and Jason Cowart, incorrectly designated as "Officer Kyle", Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

### I.     INTRODUCTION

Plaintiff in this action, Jessie W. Pearson, filed his Complaint in the United States District Court for the Northern District of Alabama on March 28, 2005.  On April 21, 2005, the Court entered an order transferring the case to the United States District Court for the Middle District of Alabama.  On May 11, 2005, this Court ordered Defendants to file a Special Report within forty days from the date of the order.

Plaintiff was arrested on March 22, 2004, on charges of open possession of alcohol, giving false information to law enforcement, DUI, driving without insurance, driving with a revoked license, and switched tag.  On March 23, 2004, he was booked into the Tallapoosa County Jail.  He was indicted on August 22, 2004, for felony DUI and giving a false name to law enforcement.  On October 10, 2004, he pled guilty to felony DUI and was sentenced to five years confinement.  He was granted probation on December 14, 2004, but was arrested on March 10,

2005, for violation of his probation. (Exhibit A, Inmate Records, Arrest, Booking, and Court Documents for Jessie W. Pearson.)

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are based on the following:

(1) delayed medical treatment
(2) contracting Tuberculosis
(3) eyes getting worse due to poor lighting
(4) being housed with inmates who have HIV or hepatitis
(5) not getting bond
(6) not being given outside work (not clear what Plaintiff is alleging)

## III. DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

### A. FACTS

#### 1. Medical Claims

It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being. An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired. At the time of admission to the jail, each inmate undergoes a medical screening completed by the booking officer. In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services without delay. The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained. Except in the case of an emergency, each inmate

requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate. All medical appointments, including appointments with the jail nurse are logged by the jail staff in the inmate log. Inmates are given prescription medication as prescribed. Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse. Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care. (Exhibit B, Affidavit of David McMichael[1], "McMichael aff."[2] ¶ 5; Exhibit C, Affidavit of Blake Jennings[3], "Jennings aff."[4] ¶ 4.)

It is the policy of the Tallapoosa County Jail that any inmate with a communicable disease will be handled and treated in a proper manner. Any inmate diagnosed as having a communicable disease is handled according to instructions from a health care professional. Any inmate diagnosed as having any communicable disease is housed in a single cell and distanced from contact with other inmates during the period of time he may be able to communicate the disease to another person. (McMichael aff. ¶ 6; Jennings aff. ¶ 5.) After an inmate has been in the Tallapoosa County Jail for two weeks, he is screened for Tuberculosis, HIV, and syphilis. (Exhibit D, Affidavit of Nurse Cathy Dubose, "Dubose aff." ¶ 4.) Since Nurse Dubose has worked at the Tallapoosa County Jail, she has not had an inmate test positive for HIV or syphilis. (Dubose aff. ¶ 5).

---

[1] David McMichael served as the Jail Administrator of the Tallapoosa County Detention Facility for the past three years, having served as Chief Deputy of the Tallapoosa County Sheriff's Department for five years prior to that time. He is now with Spillman Technology, working as a customer education instructor on law enforcement software. He is a graduate of the police academy, having graduated in 1990, after serving eight years in the army, being discharged as a Sergeant. He has also served in the National Guard. (McMichael aff. ¶ 2.)
[2] Attached hereto is a copy of the unsigned affidavit of David McMichael; upon receipt of the executed copy of David McMichael's affidavit, the Defendants will supplement this Special Report.
[3] Blake Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998. On March 19, 2004, he became the Jail Administrator of the Tallapoosa County Jail. (Jennings aff. ¶ 2).
[4] Attached hereto is a copy of the unsigned affidavit of Blake Jennings; upon receipt of the executed copy of Blake Jennings's affidavit, the Defendants will supplement this Special Report.

The records in Plaintiff's Medical file show that on March 29, 2004, Plaintiff was placed in the Medical Observation cell and was prescribed 600 mg Ibuprofen on March 30, 2004. (Exhibit E, Inmate Medical Records of Jessie W. Pearson, "Medical Records", Daily Check Logs dated March 29, 2004, Medications/Physician Orders; Dubose aff." ¶ 6.)  Plaintiff was also treated on several other occasions by the medical staff at the Tallapoosa County Jail. (Medical Records Medications/Physician Orders, Progress Notes, Daily Check Logs, Medical Requests; Dubose aff. ¶ 6)

On April 14, 2004, Plaintiff had a positive Tuberculosis Skin test.  (Exhibit F, Medical Records, TB Clinical Record for Jessie W. Pearson; Exhibit G, Medical Records, Tuberculosis Treatment Log for Jessie W. Pearson; Dubose aff. ¶ 7.)  However, this positive result does not mean that Plaintiff had Tuberculosis.  (Exhibit H, Medical Records, Instructions for TB Treatment and Prevention.)  It only means that he had germs in his body that cause Tuberculosis. (Id.)  Plaintiff was sent to the Tallapoosa County Health Department for a chest x-ray which came back normal.  (TB Clinical Record; Dubose aff. ¶ 7.)  However, as a preventative measure, the doctor prescribed INH (Isoniazid) for Plaintiff.  (Id.; Exhibit I, Medical Records, Prescription for Jessie W. Pearson; Dubose aff. ¶ 7.) Plaintiff agreed to the doctor's recommendation and was treated accordingly.  (Medical Records, Tuberculosis Treatment Record;  Dubose aff ¶ 7)

Defendants have no knowledge regarding any eye problems that Plaintiff claims to have. (McMichael aff. ¶ 3; Exhibit J, Affidavit of Jason Cowart, "Cowart aff.," ¶ 2.) Plaintiff requested that Nurse Dubose call his family and ask them to bring him his glasses.  She complied with this request.  (Dubose aff. ¶ 8.)

      **2.**      **Bond**

Plaintiff submitted request forms regarding his bond on April 10, 2004, September 14, 2004, and October 12, 2004. (Exhibit K, Inmate Records, Inmate Request Forms dated April 10, 2004, September 14, 2004, and October 12, 2004.) Plaintiff also submitted one undated request form regarding his bond. (Inmate Records, Inmate Request Forms, Undated Form.) The undated request and the April 10, 2004, and September 14, 2004, requests were inquiries regarding the amount of his bond at that time. (Inmate Records, Inmate Request Forms, Undated form, Form dated April 10, 2004, Form dated September 14, 2004.) These requests were answered. (Id.) The October 12, 2004, request regarding his bond was made after Plaintiff was sentenced. (Inmate Records, Inmate Request Forms, Form dated October 12, 2004.) Therefore, Plaintiff was told that because he had been sentenced, bond was not available. (Id.)

      **3.**      **Work Detail and Work Release**

The Tallapoosa County Jail policies regarding inmate workers (work detail) and work release are set forth in the Inmate Handbook. Inmate workers are selected by the Jail Administrator upon recommendation of the shift supervisor. The selection is based on the inmate's criminal charge, behavior while in jail and ability to adequately perform the designated task. Selection is done strictly by recommendation of the staff. Work release is a separate program from the inmate worker/work detail program. Inmates who wish to participate in work release must first be ordered by the presiding judge in that inmate's case. Once this order is issued, it is the inmate's responsibility to locate an employer to hire him. (McMichael aff. ¶ 7; Jennings aff. ¶ 6; Exhibit L, Tallapoosa County Jail Inmate Handbook, "Inmate Handbook)

It is not clear what exactly Plaintiff is referring to in this allegation. Plaintiff was assigned to the Delta Dorm on August 18, 2004. (Exhibit M, Delta Dorm Rules.) On October

25, 2004, Plaintiff requested to work outside, stating that he had previously worked outside while at the Tallapoosa County Jail. (Exhibit N, Inmate Records, Inmate Request Forms, Form dated October 25, 2004.) Plaintiff's request was answered thanking him for his request and saying that he would be asked to work. (Id.) On March 30, 2005, Plaintiff requested to go on work release. (Inmate Records, Inmate Request Forms, Form dated March 30, 2005.) Lieutenant Moss responded informing Plaintiff that work release must be ordered by the Judge. (Id.) Plaintiff also requested to become a trustee on May 8, 2005. (Inmate Records, Inmate Request Forms, Form dated May 8, 2005.)

### 4. Grievance Procedures

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the detention center via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. (McMichael aff. ¶ 8; Jennings aff. ¶ 7.)

Despite the fact that Plaintiff is familiar with the request and grievance procedures of the jail, as evidenced by his several request forms submitted, neither former Jail Administrator David McMichael nor current Jail Administrator Jennings have any recollection of a grievance being filed regarding the allegations in Plaintiff's complaint. (McMichael aff. ¶ 9; Jennings aff. ¶ 8; Exhibit O, Inmate Request Forms.[5])

### B.   LAW

---

[5] The remaining documents in Plaintiff's inmate file that are not previously identified as separate exhibits are attached hereto as Exhibit N.

> **1.     Any claim by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

Plaintiff's claims for money damages against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs); <u>See</u> <u>also</u> <u>Gaines v. Choctaw County Comm'n</u>, 242 F. Supp. 2d 1153, 1159 (N.D. Ala. 2003) ("The Sheriff is considered a state officer, and so are his employees."); <u>Vinson v. Clarke County</u>, 10 F. Supp. 2d 1282, 1305 (S.D. Ala. 1998) (explaining "the sovereign immunity protections have been construed by courts to extend to employees of the state, including county sheriffs and jailers).

In addition, the official capacity claim must fail because 42 U.S.C.A. § 1983 prohibits a *person*, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C.A. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989). Any claim against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983

and therefore claims against them in their official capacity fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

### 2. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

#### a. Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Detention Facility.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Internal grievance procedures at the Tallapoosa County Detention Facility are available to all inmates.  It is the policy of the Tallapoosa County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon.  Inmates are given an Inmate Grievance Form to complete and return to a Tallapoosa County Detention Facility staff member for any grievances they may have.  No such grievance was filed by the Plaintiff as there is not a grievance form in his jail file concerning the claims made the basis of this Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Tallapoosa County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has

provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

> b. **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions.  The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the injuries do not have to be significant.  Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.), vacated, 197 F.3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc).  In the present action, Plaintiff has not demonstrated that he has suffered a physical injury that is more than *de minimis* as a result of the allegations described in his Complaint.  As a result, the case is due to be dismissed pursuant to 42 U.S.C § 1997e(e).

> 3. **Alternatively, Defendants are entitled to summary judgment based on the defense of qualified immunity.**
>
> a. **Qualified Immunity Standard**

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional

violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity"

- 10 -

case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff has not met his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, defendants are entitled to qualified immunity.

      **b.**    **Plaintiff has failed to establish any deliberate indifference by Defendants to a serious medical condition from which Plaintiff suffered.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical

attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

Plaintiff has failed to show and there is no evidence showing that Plaintiff has had any serious medical condition. Further, the medical records show that Plaintiff was granted medical treatment on several occasions while incarcerated at the Tallapoosa County Jail. Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been

retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[6] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

    **4.    Plaintiff's claim against Defendants must fail because he has not alleged that they had any personal involvement in the alleged constitutional violation.**

Plaintiff does not allege that Defendants were in any way personally involved in Plaintiff's alleged constitutional violation. In fact Plaintiff has not even made any specific allegations against either Defendant. Defendants therefore construe Plaintiff's claim against them as an attempt to hold them liable under a *respondeat superior* theory. To the extent Plaintiff seeks relief on that basis,

---

[6] The medical director was a trained and licensed nurse. 302 F.3d at 846.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996). There are absolutely no facts that show that Defendants personally participated in any alleged constitutional violation. Therefore, Plaintiff's claim against both Defendants are due to be dismissed.

### 5. Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d at 831. However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[7] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[7] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## IV.  CONCLUSION

Defendants deny each and every allegation made by Plaintiff Jamie Ray in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## V.  MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a motion for summary judgment, and grant unto them the same.

Respectfully submitted this the 20th day of June, 2005.

        **s/Amanda Allred**
        GARY L. WILLFORD, JR. Bar Number:  WIL198
        AMANDA ALLRED Bar No. ALL079
        Attorneys for Defendants
        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Drive
        P.O. Box 240909
        Montgomery, Alabama  36124
        Telephone:  (334) 262-1850
        Fax:  (334) 262-1889
        E-mail:  aallred@webbeley.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 20th day of June, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Jessie Pearson
Tallapoosa County Jail
316 Industrial Park Drive
Dadeville, AL 36853

                                            **s/Amanda Allred**
                                            OF COUNSEL